[No. 20657. Department Two. July 20, 1927.]

THE STATE OF WASHINGTON, *Respondent,* v. SIDNEY BRUNN, *Appellant.*[1]

[1] INDICTMENT AND INFORMATION (72)—DUPLICITY—CHARGING OFFENSES ON DIFFERENT DAYS. Rem. 1927 Sup., § 2059, authorizing the joinder of several charges, (1) growing out of the same transaction, (2) two or more acts or transactions connected together, and (3) two or more acts or transactions of the same class of crimes which may be properly joined, does not authorize the joinder of several distinct and separate forgeries of separate instruments at different times.

[2] EVIDENCE (188)—FORGERY (7)—OPINION EVIDENCE—HANDWRITING. In a prosecution for forgery, it is error to exclude the opinion as to the genuineness of the contested signature of a witness who was familiar in the usual course of business with the signature of the person whose name was alleged to be forged.

Appeal from a judgment of the superior court for King county, Frater, J., entered November 16, 1926, upon a trial and conviction of forgery. Reversed.

*Adam Beeler* and *John J. Sullivan,* for appellant.

*Ewing D. Colvin,* for respondent.

[1]Reported in 258 Pac. 13.

TOLMAN, J.—Appellant was charged by information with the crime of forgery in the first degree. The information contains twenty-six counts, each charging the forging and uttering of a separate and distinct instrument on a date certain, ranging from June 23, 1925, to September 8, 1925, each act complete in itself and no one having any relation to any other, except, that the name of C. B. White was alleged to have been forged in twenty-one of the counts and the name of T. A. Dean in the remaining five counts. To the information and to each count thereof a demurrer was interposed, which was overruled. The cause came on for trial, and after a jury was impaneled and before any evidence was received, appellant objected to the introduction of any testimony on the ground that the information did not charge a crime; and on the further ground that the information charged more than one crime. This objection was also overruled. From a verdict of guilty and a judgment and sentence thereon, this appeal is prosecuted.

[1] The authority for joining these numerous counts in one information, if there be any such, is to be found in chapter 109, Session Laws of 1925, p. 168, amending § 2059, Rem. Comp. Stat., to read: · ·,·

"When there are several charges against any person, or persons, for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined, instead of having several indictments or informations the whole may be joined in one indictment, or information, in separate counts; and, if two or more indictments are found, or two or more informations filed, in such cases, the court may order such indictments or informations to be consolidated."

This act has been considered by this court in but two cases, so far as we are now advised, and in neither of

them is the question now presented very clearly passed upon. The first of these is *State v. Lopeman,* 143 Wash. 99, 254 Pac. 454, in which the accused was charged in three counts with the crimes of robbery, grand larceny and assault in the second degree, all arising out of the same transaction. The error assigned was on the refusal of the trial court to require the state to elect, and the holding of this court was that, if there was the right in the court to require an election, that was a discretionary right, and, no prejudice appearing, the denial was not erroneous. *State v. Dixon,* 143 Wash. 262, 255 Pac. 109, is more nearly in point. It was there held that two counts in the same information, one charging forcible rape and the other charging statutory rape, growing out of the same acts, were properly joined. The court said:

"It seems plain to us that these two crimes were properly chargeable by separate counts in one information, since the enactment of the amendment of 1925 above quoted. This information charges but a single act. The two separate counts charge two separate legal consequences, but not two separate acts. We conclude that so charging appellant was proper, and not prejudicial to his rights."

In *State v. Beaman,* 143 Wash. 281, 255 Pac. 91, the statute might have had some application, but it is not cited or mentioned in any wise and presumably was not considered.

The statute is plain and unambiguous. It covers three possible contingencies. First, several charges growing out of one act or transaction. Clearly this case does not belong under that head, though the *Dixon* case, *supra,* did. Second, two or more acts or transactions connected together. There is nothing here to indicate the slightest connection between any two or more of the acts charged. They are as separate and distinct acts as though a different name and an instru-

ment of a different nature had been forged on each occasion. One may imagine a burglar efficient and industrious enough to break and enter a dozen different storerooms in a single night, and each of the storerooms, though in separate buildings, belonging to the same owner. Still, each breaking and entry would be a different act and the common ownership would not in any wise connect the acts. The third ground for joinder of counts mentioned in the statute is "two or more acts or transactions of the same class of crimes . . . ., which may be properly joined." It will be observed at once that this does not authorize joinder where a joinder was not already permissible, but merely provides how a joinder already permissible shall be made. We know of no rule of law existing before or since the enactment of the statute, and the state cites none, which will permit joinder of the several distinct and separate offenses here charged, and are therefore forced to conclude that the trial court erred in the rulings to which reference has been made.

Some attempt has been made by the state to show a waiver of the points just discussed by the accused. We do not consider that showing, because the practice in this respect should be settled, and also because the judgment must, in any event, be reversed upon another ground.

[2] One Turner, a witness called for the defense, qualified by testifying that he had for several years been connected with the Seattle office of the surety company which employed White and Dean and authorized them to sign and issue bonds, and whose signatures are alleged to have been forged to twenty-six such instruments by the information in this case. The witness testified that he had seen Mr. White's signature many times and was familiar with it. His attention was directed to the documents bearing the

questioned signature of C. B. White, and he was asked to state whether or not, in his opinion, such signature was the signature of C. B. White. The state's objection, on the ground that the witness was not qualified as a handwriting expert, was sustained. This was clearly error, under a long line of decisions by this court, in which the rule has been very clearly laid down that one who is familiar, in the usual and ordinary course of trading or business, with the signature of another is a competent witness upon the question of the genuineness or otherwise of the handwriting or signature. A case can hardly be imagined where a witness testifying to a familiarity with the handwriting of a particular person would not be competent to give his opinion. The weight of such testimony is, of course, for the jury. *Poncin v. Furth,* 15 Wash. 201, 46 Pac. 241; *State v. Simmons,* 52 Wash. 132, 100 Pac. 269; *O'Brien v. McKelvey,* 59 Wash. 115, 109 Pac. 337; *State v. McGuff,* 104 Wash. 501, 177 Pac. 316.

The judgment is reversed.

MACKINTOSH, C. J., HOLCOMB, FRENCH, and PARKER, JJ., concur.